IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ROBERT DALE GRAY, ) <br> ) <br> Defendant. ) | Case No. 6:96-CR-03075-MDH |

## ORDER

Before the Court is Defendant Robert Dale Gray's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) (Doc. 154). The Government filed its Suggestions in Opposition (Doc. 159), and Defendant filed his Reply Suggestions (Doc. 161). The matter is now ripe for review. For the reasons set forth herein, the Motion is **GRANTED**. The Court hereby reduces Gray's sentence from a life sentence to time served with 10 years of supervised release.

## BACKGROUND

On November 1, 1996, a federal grand jury returned a three-count Indictment charging Gray with conspiracy to distribute a controlled substance, in violation of 21 U.S.C. § 846 (Count One); possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Count Two); and witness tampering, in violation of 18 U.S.C. § 1512(b). (Doc. 11). On November 19, 1996, the Government filed an information pursuant to 21 U.S.C. § 851, alleging Gray had two prior felony drug convictions, enhancing the penalties under 21 U.S.C. § 841(b)(1)(A). (Doc. 14).

On December 18, 1996, Gray was indicted in Case Number 96-03082-01-CR-S-RGC on one count of threatening to murder a federal agent, in violation of 18 U.S.C. §§ 115 and 1114. On December 19, 1997, during Gray's sentencing for conspiracy to distribute, the Court determined

1

that Gray's prior convictions for felony sale of methamphetamine on July 26 and July 27, 1989, qualified as separate offenses under 21 U.S.C. § 841(b)(1)(A). The convictions were charged in the same instrument and resulted from the same arrest. These prior convictions included two offenses only 48 hours apart: two counts of felony sale of methamphetamine on July 26, 1989 and July 27, 1989 as well as one count of possession of methamphetamine on July 27, 1989. These prior offenses were for the sale and possession of a total of less than two grams of methamphetamine.

On April 28, 1997, shortly after the beginning of trial for the present offense, Gray pleaded guilty to Count One, that is, conspiracy to distribute a controlled substance. In exchange, the Government agreed to dismiss the remaining counts and also the Indictment in Case Number 96-03082-01-CRS-RGC. (Doc. 74; PSR ¶ 10).. Because Gray had two prior felony drug convictions which, at that time, counted as separate offenses, he was subject to a mandatory life sentence without parole under 21 U.S.C. § 841(b)(1)(A). *Id.*

On September 22, 1997, this Court sentenced Gray to a term of life imprisonment, to be followed by ten years' supervised release. (Doc. 103). The Court noted that it was "bound by the statutes passed by Congress and also bound by the guidelines. And whether the sentence called for under the statute is excessive, the Court has very little discretion, if any, in departing from the statute." Transcript of September 19, 1997 Sentencing 20:15-19. Gray's sentence was affirmed on appeal. *United States v. Gray*, 152 F.3d 816, 818 (8th Cir. 1998).

The First Step Act of 2018 has since abolished mandatory life sentences for drug offenders that have two or more qualifying drug offenses. *See* First Step Act of 2018, Pub. L. No. 115-391, § 401, 132 Stat. 5194, 5220–21. Further, Amendment 709 has clarified that prior offenses charged in the same instrument and without an intervening arrest, such as Gray's two underlying

convictions for felony sale of methamphetamine on July 26 and July 27, 1989, are no longer considered separate offenses under the sentencing guidelines. *See* U.S.S.G. § 4A1.2(a)(2) (amended 2007). Gray is "seeking relief from this Court to bring his sentence within current public policy and justice norms." (Doc. 154, p. 3).

Gray has significant health concerns. He is sixty-nine years old and suffers from type 2 diabetes, hypertension, and cirrhosis of the liver and has a history of Hepatitis C. Given the COVID-19 pandemic—and the fact that Gray has previously contracted the virus—it is unclear what long-term effects he may encounter or whether he would be able to survive contracting COVID-19 a second time.

## DISCUSSION

### A. First Step Act

Under 18 U.S.C. § 3582(c) a court may not modify a term of imprisonment once it has been imposed except that, under subsection § 3582(c)(1)(A), a court may reduce a term of imprisonment upon finding "extraordinary and compelling reasons," if such reduction is consistent with applicable policy statements of the Sentencing Commission, after considering the factors set forth in 18 U.S.C. § 3553(a), and after determining the defendant is not a danger to the community as provided in 18 U.S.C. § 3142(g). (U.S.S.G. § 1B1.13(2).)

To be entitled to relief under § 3582(c)(1)(A)(i), a defendant must show: (1) he has exhausted his administrative remedies; (2) extraordinary and compelling reasons warrant a reduction of his sentence; and (3) the sentencing factors outlined in § 3553(a) support his release. *United States v. Roat*, 6:15-03076-CR-RK, 2020 WL 4506091, at *1 (W.D. Mo. Aug. 5, 2020).

As the proponent of a 18 U.S.C. § 3582(c)(1)(A) motion, the inmate bears the burden of proving both that they have satisfied the procedural prerequisites for judicial review – *i.e.*, that

3

they have "exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf" or that 30 days have lapsed "from the receipt of such a request by the warden" – and that "extraordinary and compelling reasons" exist to support the motion. 18 U.S.C. § 3582(c)(1)(A). Gray and the Government agree that Gray has exhausted his administrative remedies based upon his requested relief being denied by the warden at El Reno FCI on September 11, 2020. (Doc. 154, p. 8).

### a. Extraordinary and Compelling Reasons

Under 18 U.S.C. § 3582(c)(1)(A), the pertinent policy statement, U.S.S.G. § 1B1.13, defines specific medical, age, and family circumstances as possibly justifying a sentencing reduction under this statute, and further authorizes a sentencing reduction based on an extraordinary and compelling circumstance identified by the BOP. *See* §1B1.13 Cmt. n.1(D).) However, the "extraordinary and compelling reasons" upon which district courts may reduce a sentence are not limited to medical condition, age, and family circumstances. *See United States v. Rodd*, 966 F.3d 740, 746–47 & n.7 (8th Cir. 2020) (recognizing a district court's discretion under the First Step Act to determine whether extraordinary and compelling reasons exist for compassionate release); *see also United States v. Littrell*, 461 F. Supp. 3d 899, 904–05 (E.D. Mo. 2020) (stating § 1B1.13 of the Sentencing Guidelines provides guidance but does not limit the court). This Court is therefore free to determine whether "extraordinary and compelling reasons" warrant reduction of Gray's sentence. *Id.*

### i. Gray's health concerns relating to the COVID-19 pandemic

Gray argues that even though he contracted and survived COVID-19 while incarcerated, "it remains unclear how it will affect him long term" given the novel nature of the virus. (Doc. 154, p. 14). Gray is sixty-nine years old and suffers from type 2 diabetes, hypertension, and

4

cirrhosis of the liver and has a history of Hepatitis C. With his pre-existing conditions, it is unclear what long-term effects he may encounter or whether he would be able to survive contracting COVID-19 a second time.

The COVID-19 pandemic and the risks to those incarcerated have been considered "extraordinary and compelling" reasons for granting release. *See Robinson*, 2020 WL 5200929, at *2; *United States v. Bell*, No. 16-00003-01-CR-W-SRB, 2020 WL 7647554, at *2 (W.D. Mo. Dec. 23, 2020); *United States v. Smith*, 464 F. Supp. 3d 1009, 1021 (N.D. Iowa 2020) (collecting cases). Further, vaccination against COVID-19 has not been a bar to compassionate release in other cases. *See*, *e.g.*, *United States v. Murakami*, No. 1:17-CR-10346-DPW, ECF No. 80 (D. Mass. Feb. 25, 2021) (granting compassionate release to hypertensive defendant who had received one dose of the vaccine, and would receive second dose prior to release); *United States v. Sandoval*, 3:14-cr-05105-BHS, ECF No. 617 at 9 (W.D. Wash. Feb. 22, 2021) (granting compassionate release notwithstanding vaccine dose, citing expert opinion that "efficacy of the vaccine in various subpopulations, such as immunosuppressed individuals, is still unknown"); *United States v. Sweet*, No. 2:07-CR-20369-VAR-VMM, ECF No. 42 (E.D. Mich. Apr. 15, 2021) ("[B]eing fully vaccinated decreases one's likelihood of severe COVID symptoms, [but] recent data reveals that the threat of severe illness or death from COVID-19, while diminished, is nevertheless real.").

Even if the COVID-19 pandemic, along with Gray's age and medical conditions, is not in and of itself extraordinary and compelling reasons for the reduction of Gray's sentence, the combination of these factors with the circumstances of his current sentence is.

### ii. Current sentence

Gray contends that his life sentence is an extraordinary and compelling reason for his release under § 3582(c)(1)(A). The 2018 First Step Act has made several changes to sentencing

5

statutes, including to 21 U.S.C. § 841 which was instrumental in Gray's sentencing. Before the First Step Act was passed, defendants with two prior felony drug convictions received mandatory life imprisonment under 21 U.S.C. § 841(b)(1)(A). The First Step Act changed (1) the mandatory minimum sentence for a defendant with two qualifying convictions under 21 U.S.C. § 841, and (2) what constitutes a qualifying conviction. Today, the mandatory minimum for two qualifying prior felony convictions is twenty-five years rather than life; and the mandatory minimum for one qualifying felony conviction is fifteen years. Additionally, the mandatory minimum enhancements only apply when the defendant has accrued prior convictions for a "serious drug felony." 21 U.S.C. § 841(b)(1)(A). A serious drug felony is defined as an offense for which the defendant served a term of imprisonment of more than twelve months on the qualifying prior offense, and the offender's release from any term of imprisonment was within fifteen years of the commencement of the instant offense. *See* First Step Act of 2018, Pub. L. No. 115-391, § 401, 132 Stat. 5194, 5220–21; 21 U.S.C § 841(b)(1)(A); 21 U.S.C. § 802(57).

Further, Amendment 709 to the Federal Sentencing Guidelines clarified instructions for computing criminal history of a defendant for sentencing purposes. *See* U.S.S.G. § 4A1.2(a)(2). Today, prior sentences are counted separately "if the sentences were imposed for offenses that were separated by an intervening arrest." *Id.* "If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day." *Id.*

District courts in the 8th Circuit and across the United States have considered the severity or length of a defendant's sentence when considering whether extraordinary and compelling circumstances exist. *See United States v. Adams, 4:18-CR-93 RLW, 2021 WL 126797, at \*9 (E.D. Mo. Jan. 11, 2021)* ("Courts also consider overly harsh sentences and sentencing disparities as

factors contributing to 'extraordinary and compelling reasons.'"); *United States v. Ledezma-Rodriguez*, 472 F. Supp. 3d 498, 500 (S.D. Iowa 2020) ("Congress already demonstrated how factors that cannot be an 'extraordinary and compelling reason' alone can still be considered with other factors. And if this is so, it is hard to argue that the unfairness of keeping a man in prison for decades more than if he had committed the same crime today is anything other than compelling. This is especially so when Defendant almost certainly would have completed his term of imprisonment by now if sentenced under modern law. Defendant thus presents an 'extraordinary and compelling reason[ ]' for a sentence reduction under § 3582(c)(1)(A)(i).") (internal citations omitted); *United States v. Brown*, 457 F. Supp.3d 691, 702–703 (S.D. Iowa 2020); *United States v. Stephenson*, 461 F. Supp. 3d 864, 874 (S.D. Iowa 2020).

Numerous defendants facing sentences imposed under mandatory Sentencing Guidelines or other since-invalidated laws have been granted compassionate release at least in part based on the perceived unfairness of their original sentences. *United States v. Littrell*, 461 F. Supp. 3d 899, 906 (E.D. Mo. 2020) (considering "[t]he extraordinary and compelling circumstances resulting from the change in sentencing law" as a factor); *United States v. Haynes*, 456 F. Supp. 3d 496, 514 (E.D.N.Y. 2020) (deeming the "brutal impact of [defendant's] original sentence" and "its harshness as compared to sentences imposed on similar and even more severe criminal conduct today" to be an extraordinary and compelling reason); *United States v. Marks*, 455 F. Supp. 3d 17, 36 (W.D.N.Y. 2020) (holding that, while the retroactivity provisions of the First Step Act did not apply directly to defendant, the First Step Act still "evidences Congress's intent to mitigate the harsh and sometimes unjust effects of the sentencing laws").

As of the time of this Order, Gray has been incarcerated for over twenty-four years and is sixty-nine years old. If Gray were to be sentenced under the current sentencing guidelines and 21

7

U.S.C. § 841, he would not face a life sentence. Gray's convictions for felony sale of methamphetamine on July 26, 1989 and July 27, 1989 were not separated by an intervening arrest and both offenses were in the same charging instrument. Today, these offenses would be considered one offense for the purpose of sentencing Gray. *See* U.S.S.G. § 4A1.2(a)(2). Gray would therefore have one prior drug related offense under 21 U.S.C. § 841 and face a mandatory minimum of fifteen years. Even if both of Gray's prior drug felonies qualified under 21 U.S.C. § 841, the mandatory minimum would be twenty-five years, rather than the life sentence he is now serving.

### B. Section 3553(a) factors

This Court may not modify or reduce the defendant's sentence without considering the 18 U.S.C. § 3553(a) factors, including the nature and circumstances of the offense and history and characteristics of the defendant; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from future crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3582(c); *see also Jones*, 980 F.3d at 1114 (citing *Gall v. United States*, 552 U.S. 38, 49-50 (2007) ("District courts should consider all relevant § 3553(a) factors before rendering a compassionate release decision.").

The § 3553(a) factors include: (1) nature and circumstances of the offense and the history and characteristics of the defendant.; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training,

8

medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of Title 28, United States Code, subject to any amendments made to such guidelines by act of Congress; and that except as provided in section 3742(g), are in effect on the date the defendant is sentenced; (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress; and that except as provided in section 3742(g), are in effect on the date the defendant is sentenced; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; (7) the need to provide restitution to any victims of the offense.

As to the nature and circumstances of the offense, Gray was sentenced to mandatory life in prison for a non-violent drug offense. He pled guilty to conspiracy to distributing fifty-four ounces of methamphetamines for a lesser role in a greater scheme. Gray asserts that he was "not the mastermind of the operation, but rather the middle-man with a drug dependency problem." (Doc. 154, p. 17). Gray's prior convictions that required the Court to sentence him to life were for sales and possession within a forty-eight hour period of less than two grams of methamphetamine.

While Gray "had a troubled past," (*id.*) Gray has shown strides in rehabilitation in incarceration through vocational training and consistent employment. Further, Gray contends that he is not a violent man and has maintained a spotless disciplinary record throughout his twenty-four years of incarceration. Courts have found that these characteristics support a sentence modification. *See, e.g., United States v. Bell*, No. 16-00003-01-CR-W-SRB, 2020 WL 7647554,

9

at *3 (W.D. Mo. Dec. 23, 2020) ("Defendant has maintained employment, committed no acts of violence, and completed numerous education courses…Defendant's commitment to rehabilitation and medical conditions outweigh any marginal benefit he would receive from finishing his sentence in prison."); see also *United States v. Smith*, No. 4:12CR182 HEA, 2020 WL 3429150, at *2 (E.D. Mo. June 23, 2020).

As to the need for the sentence imposed, Congress has since determined his crimes do not merit Gray's current sentence. Gray has been incarcerated for over twenty-four years, which likely reflects the seriousness of the offense, promote respect for the law, and provides just punishment for the offense. 18 U.S.C. § 3553(2)(A); *see United States v. Leathers*, No. 01-CR-00020-SRB-1, 2020 WL 7636222, at *2 (W.D. Mo. Dec. 22, 2020) (finding incarceration for nearly two decades and substantial portion of sentence was sufficient).

Additionally, Gray's over twenty-four years of confinement has severely weakened— if not vitiated—the need for his life sentence. *See, e.g., United States v. Ledezma-Rodriguez,* 472 F. Supp. 3d 498, 508 (S.D. Iowa 2020) (finding the need for a life sentence "appears weaker after two decades of incarceration" and reducing mandatory life sentence under prior sentencing scheme to time served); *United States v. Stephenson*, 461 F. Supp. 3d 864, 874 (S.D. Iowa 2020). ("[T]he 'need for the sentence imposed' appears weaker after fifteen years of incarceration.").

Moreover, Gray was sentenced to ten years of supervised release which is adequate to ensure continued good behavior. *See Leathers*, 2020 WL 7636222, at *3 ("Defendant is subject to a five-year term of supervised release upon his release from imprisonment, ensuring he will continue to be adequately monitored."); *Stephenson*, 461 F. Supp. 3d at 874 (noting that noncustodial sentences also curtail "prized liberty interests" and "the Defendant always faces the harsh consequences that await if he violates the conditions" attached to such a sentence).

Furthermore, the kind of sentence and sentencing range available today is drastically different than what Gray faced two decades ago and demonstrates the dire need to avoid unwarranted sentencing disparities. As discussed, mandatory life sentences for drug offenses no longer exist. This change in law is significant and courts have considered the discrepancy between the harsh sentencing protocol of the past and the more lenient standards of today as factor in reducing a sentence. *See*, *e.g.*, *Littrell*, 461 F. Supp. 3d at 905. Today, the mandatory minimum sentence Gray would face is fifteen years, and a Guidelines range of 292 to 365 months.

Additionally, Gray is the only Defendant in several related cases serving a life sentence. (Doc. 154, Ex. A, PSR at 5). Of the eight other defendants to the conspiracy, three received probation, and the terms of imprisonment ranges from 60 months to 360 months. The head of the conspiracy, Randy Shultz, received a sentence of 324 months, or twenty-seven years. *Id*

### C. Section 3142(g) factors

U.S.S.G. § 1B1.13 directs courts to also consider the factors outlined in 18 U.S.C. § 3142(g) in order to determine whether the defendant remains a danger to the community. Under 18 U.S.C. § 3142(g), this Court must consider four factors in determining whether the defendant might present a danger: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1)-(4).

The Government's opposition to the Motion is almost entirely based on its view of how the § 3142(g) factors apply in this case. It notes:

> During the underlying offense, Gray conspired to distribute methamphetamine, in a conspiracy involving at least nine other people, and Gray was a main distributor. A co-conspirator stated that she and Gray also produced methamphetamine. The PSR found that Gray's relevant conduct included at least 19.5 pounds of methamphetamine. During the course of the investigation, Gray assaulted a witness, which was the subject of Count Three of the Indictment, witness tampering. Gray denied the assault was related to the witness's anticipated testimony. Through a third party, Gray threatened to murder a DEA agent. Gray stated that his threats toward the DEA agent were a result of his belief that the agent had let it be known that Gray was cooperating with the government in attempting to locate a victim's body, and that it placed Gray's life in jeopardy.
>
> Gray's past convictions include aggravated assault, in which Gray took a police officer's gun and fired all rounds in the vicinity of the officer, allegedly to scare the officer. Gray was also convicted of distribution of a controlled substance and possession of a controlled substance, both involving methamphetamine.
>
> Gray's other arrests include two instances of first-degree murder, one of which Gray was acquitted at a jury trial and on the second, Gray was taken into custody and later released with no charges filed.

(Doc. 159, pp. 14-15) (citations omitted).

Gray argues, however, that his spotless disciplinary record, his age, and his family's support weigh heavily in favor of his release under § 3142(g). Gray also notes that the Government cites incidents from several decades ago that had no bearing on his current life sentence. The Government asks the Court to consider not only arrests without charges, but also a charge for which Gray was found not guilty after a jury trial.

As the Supreme Court has observed, "evidence of post sentencing rehabilitation ma plainly be relevant to 'the history and characteristics of the defendant.'" *Pepper v. United States* 562 U.S. 476, 491 (2011). Gray has held a job during his twenty-four years of incarceration and his dedication shows extensive rehabilitative effort. In 2007, Gray began a trainee position with UNICOR Quality Assurance Department and has since risen to the position of Final Quality Inspector. Ex. G, Mem. Drinkwater to Warden. Gray has built vocational skills through completion of a 4000-hour United States Department of Labor Quality Assurance apprenticeship–finishing

12

ahead of all others in his class. Gray was also nominated for a Special Achievement Award for his outstanding work performance as recognition for his "work ethic and dedication to the job at hand," and "display[ing] a strong willingness to teach what he has learned so that others may benefit from his knowledge." Gray is an exemplary worker who has earned the respect of his peers and the staff. *Id.* His supervisor noted "it is inmate workers like Gray that UNICOR wishes to project to others and fulfill its mission of teaching meaningful skills and trades to inmates for employment opportunities upon release."

Furthermore, at sixty-nine years old, risk of recidivism is remote. Recidivism rates are incredibly low for prior offenders of advanced age. The Eighth Circuit and this Court have considered this factor in determining whether a defendant poses a danger to the community. *See*, *e.g.*, *United States v. Wadena*, 470 F.3d 735, 740 (8th Cir. 2006) ("[defendant]'s age and recent deterioration in his health reduce the risk of re-offending"); *United States v. Bell,* 16-00003-01-CR-W-SRB, 2020 WL 7647554, at *3 (W.D. Mo. Dec. 23, 2020) ("Defendant has no history of violent disciplinary actions while incarcerated. Considering Defendant's age (55), his chance of recidivism upon release is low.") (citing The Effects of Aging on Recidivism Among Federal Offenders prepared by the United States Sentencing Commission); *United States v. Leathers*, 01-CR-00020-SRB-1, 2020 WL 7636222, at *3 (W.D. Mo. Dec. 22, 2020) ("In opposing his release, the Government focuses on [defendant's] criminal history but does not address his current physical condition which, as previously discussed, significantly reduces the danger [defendant] may pose to any person or community should he be released. Additionally, given [defendant's] age (66), his chance of recidivism is low.").

Gray asserts that he has a strong support system waiting to help him re-enter society. Gray has a sister and two daughters, as well as grandchildren, "eagerly waiting to welcome him home."

(Doc. 154, p. 19). His family has apparently developed a re-entry plan to support him by assisting with housing, transportation, financial support, and assistance with employment. *Id*. Gray will also have access to a job and a local church that hosts men's recovery groups. *Id.* Gray's family support upon release additionally mitigates the danger of recidivism and cuts against the need for his life sentence.

## CONCLUSION

After careful consideration of the entire record, the Court finds that the circumstances of Gray's mandatory life sentence—in particular, the change in law that would not have required Gray to serve a mandatory life sentence if he were sentenced today—combined with his age and medical concerns constitute extraordinary and compelling reasons to reduce Gray's life sentence under 18 U.S.C. § 3582(c)(1)(A). Furthermore, the Court finds that §§ 3553(a) and 3142(g) factors warrant a reduction in Gray's sentence.

The Court hereby reduces Gray's sentence to time served with 10 years of supervised release. While on supervised release, Gray shall comply with the mandatory and standard conditions of the Western District of Missouri and with the previous special condition included in Gray's original sentence. This order is stayed for up to 30 days for the verification of the defendant's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure the defendant's safe release.

**IT IS SO ORDERED.**

Dated: September 8, 2021                              */s/ Douglas Harpool*
                                                                       **DOUGLAS HARPOOL**
                                                                       **United States District Judge**